Filed 11/25/14  P. v. Foster CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>DAVON FOSTER,<br><br>　　　　Defendant and Appellant. | A137621<br><br>(Alameda County<br>Super. Ct. No. 169556) |

**I.**

**INTRODUCTION**

A jury found appellant Davon Foster guilty of attempted robbery.  (Pen. Code, §§ 664, 211.)[1]  After the jury returned its guilty verdict, the trial court found that the new conviction established a violation of probation previously granted and sentenced appellant to a total term of three years in state prison.  On appeal, appellant contends the trial court abused its discretion, and denied him his constitutional right to a meaningful opportunity to present a complete defense, when it denied his motion to continue the trial. The motion was made after a defense witness, who was under subpoena, failed to appear. We conclude the trial court's denial of a continuance was an abuse of discretion because the testimony of the missing witness was shown to be material to the defense.  The denial also was prejudicial to appellant because if that testimony was credited by the jury, there

---

[1]  All undesignated statutory references are to the Penal Code.

1

existed a reasonable probability that the result would have been different. Consequently, we reverse the judgment.**²**

## II.

## FACTS

At about 8:30 p.m. on July 26, 2012, Abdulsalam Jobah was the sole employee working at the ABB Market at 96th Avenue and Birch Street in Oakland. The market is located in an "extremely high crime area, [with] lots of shootings, robberies, drug dealing." The market had a surveillance camera, but it had been broken for the previous four months.

Jobah saw a man he later identified as appellant standing near the market's front entrance watching customers enter and leave the market. Jobah knew the man on sight because he had seen him approximately three times before when the man had purchased items at the market. Jobah testified he never had any problems with him, and they had never before exchanged any words.

The man was at the door for about 30 minutes, which made Jobah believe he was "going to do something." Jobah politely asked him to leave several times. However, the man did not leave or respond. When the market was empty of customers, the man came into the store. Jobah was behind the counter near the cash register. The man asked for a pack of cigarettes. Jobah reached up with one hand to retrieve the cigarettes from the overhead case, but he placed his other hand near a small button under the counter which would send a silent alarm to summon the police. Jobah noticed the man had put his hand underneath his shirt. The man demanded in an aggressive tone, "Give me the money. Give me the money."

Jobah testified he was fearful the man "would hit me with something" or "[s]hoot me." Jobah pushed the silent alarm button. The man yelled at Jobah, "Did you call the police? Did you call the police, motherfucker?" The man threatened, "If the police catch

---

**²** In light of our reversal of the judgment, appellant's remaining issue, claiming the midtrial disclosure of a supplemental police report violated *Brady v. Maryland* (1963) 373 U.S. 83, 87, is rendered moot and need not be discussed.

2

me, I'm going to come back and kill you."[3]  Jobah did not give the man any money.  The man left the market.

About seven minutes later, Oakland Police Officers Tim Martin and Sean Bowling arrived at ABB Market in response to the silent alarm.  Jobah describe the robber as a Black man, between 165 and 170 pounds, with short black hair and a "light" mustache.  The robber wore a white T-shirt, black jacket, jeans, and a baseball cap.  Jobah told the officers that the man who had attempted to rob him walked north on 96th Avenue when he left the market.  Both officers returned to their patrol cars and slowly drove in the direction indicated.  They did not activate their sirens or flash their lights.  Within about three minutes, Officer Martin saw a man later identified as appellant attempting to hide behind a parked car as the two patrol cars approached.

The officers detained and handcuffed appellant.  Appellant gave the officers a false name and address.  Appellant's false information, which was recorded at the scene on the officer's personal recording device, was played at trial and admitted into evidence.  Within about 10 minutes of appellant's detention, Oakland Police Officer Todd O'Connor brought Jobah to the scene.  Jobah identified appellant as the man who tried to rob the market earlier that night.  Jobah was "100 percent" of his identification.

The defense did not call any witnesses.  Instead, defense counsel questioned whether an attempted robbery had been actually committed.  Counsel argued that Jobah "was already nervous" and "ready to call the police" when the individual asked for a pack of cigarettes.  Counsel surmised "a person can have their hand under the[ir] shirt for a number of different reasons," emphasizing Jobah never actually saw a weapon, and nothing was taken from the store.  Counsel observed that Jobah, whose native language was Arabic, appeared to be confused by the questions posed through a court interpreter,

---

[3]  In his written statement to the police, Jobah failed to include the robber's threat to come back and kill him if the police arrested him.

and questioned his comprehension of what the man in the store was actually saying in English.[4]

In the event the jury believed an attempted robbery was committed, counsel argued that appellant was not the person who committed this crime. Counsel stressed inconsistencies and omissions in Jobah's description of the robber and appellant's appearance when arrested, and argued repeatedly that Jobah was "not credible" and that his testimony "[did] not make sense." Also, counsel pointed out that there was no physical evidence linking appellant to the attempted robbery, and that he had $129.15 in his possession when he was arrested, implying appellant had no motive to rob the store because he did not need any money on July 26, 2012.

The jury started deliberating at 3:01 p.m. on October 18, 2012, and obviously had difficulty reaching a verdict. On October 22, 2012 at 3:58 p.m., the court received a note indicating, "We are currently at a standstill. We have a few people strongly in favor [*sic*] each verdict as well as a few undecided. We feel we have thoroughly examined the evidence presented to us. Please advise us as to how we should proceed from here." The jury was instructed to resume their deliberations. On October 23, 2012, at 2:15 p.m., the jury returned their verdict finding appellant guilty.

On November 21, 2012, the court imposed the midterm sentence of two years for the attempted robbery. Additionally, the court imposed a one-year consecutive term for a probation violation in an unrelated case, for a total prison term of three years. This appeal followed.

### III.

### DISCUSSION

Appellant contends the trial court abused its discretion when it denied his request for a continuance after a subpoenaed witness, Tiandra West, failed to appear.

---

[4] In the prosecutor's closing argument, she acknowledged "there's no denying that Mr. Jobah does not speak English as a first language . . . and certainly even when he had an interpreter in the courtroom, there was evidence that he still struggled to communicate properly on some of the things that were going on."

4

The prosecution rested its case on October 17, 2012.[5]  When the court convened the following morning, October 18, 2012, before the jury entered the courtroom, the trial court asked defense counsel if she wished to put something on the record.

"[DEFENSE COUNSEL]:  I did, Your Honor.  [¶] As the Court knows from yesterday, we did have a witness Tiandra West under subpoena.  The Court kindly allowed us to continue the case until today before calling her.  Unfortunately, although she is under our subpoena, she has not returned our calls.  I'm asking that the Court allow us a continuance to allow us to obtain her.

"THE COURT:  For the record, so I can adequately assess the motion, what would your offer of proof be as to her expected testimony.

"[DEFENSE COUNSEL]:  Her expected testimony would be that she and Mr. Foster had been at the store previously, and that the day before this incident, this gentleman, Mr. Jobah, came out and yelled at them to leave the area, and had threatened to call the police.

"THE COURT:  Well, I am going to deny your motion for a continuance.  We are drawing to the end of the case, and it would, I think, constitute an imposition on the jury and would unjustifiably delay the proceedings.  I don't believe that under your offer of proof that the proffered testimony would go directly towards the guilt or innocence, but

---

[5]  Respondent asserts that appellant was granted his first continuance after the subpoenaed witness failed to appear on October 17, 2012, after the prosecution rested its case.  However, this assertion is not clearly supported by the record.  The prosecution rested at 3:54 p.m. on October 17, 2012; and a number of motions in limine still needed to be ruled upon before the defense could proceed.  The record shows the court adjourned at 4:11 p.m., which was typical, with the understanding that the defense would commence at the start of the proceedings the next day, October 18, 2012.  During the discussion late that afternoon about Ms. West, the record contains no reference to her nonappearance and no request was made for a continuance.  The record does contain a statement by defense counsel the following morning referring to the court allowing a "continuance" until the morning of October 18 before calling the witness, but it is not clear that this was the result of any anticipated difficulty procuring Ms. West's appearance.  In any event, our conclusion would not be different if indeed a continuance had been requested by defense counsel late in the afternoon of October 17.

5

would only ground a possible argument, and therefore, the motion to continue will be denied.

"[DEFENSE COUNSEL]: And, Your Honor, since the Court is denying our motion, I have spoken to [appellant], we will be prepared to rest." The defense then moved for a mistrial, arguing the, "cumulative error throughout the trial, I believe that my client's 5th, 6th, and 14th Amendment rights have been violated." The court denied the defense motion for a mistrial.

Appellant contends he was entitled to a continuance in order to procure West's appearance as a witness. He asserts her testimony was critical to show that Jobah had a contentious encounter with appellant, taking place just a day before the attempted robbery, during which he threatened to call the police. Appellant claims "Ms. West's testimony would have corroborated and bolstered the defense theory of the case that Mr. Jobah had clear animus towards appellant and his testimony was biased." On these facts, appellant insists the trial court's denial of a continuance to produce a subpoenaed witness was an abuse of discretion which violated his right to a fair trial.

"Continuances shall be granted only upon a showing of good cause. . . ." (§ 1050, subd. (e); see Cal. Rules of Court, rule 4.113.) The granting or denial of a motion for a midtrial continuance rests within the sound discretion of the trial court, which must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1105.) A reversal of a conviction may occur if the denial of a request for a continuance was an abuse of discretion and the defendant was prejudiced. (*People v. Doolin* (2009) 45 Cal.4th 390, 450.) "To establish prejudice, a defendant must show affirmatively that in the absence of the claimed error (here, denial of his motion to continue . . . ), a result more favorable to him probably would have ensued. . . ." (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1549 (*Gonzalez*), citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

6

"When a continuance is sought to secure the attendance of a witness, the defendant must establish 'he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.' [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) Appellant has satisfied each of these requirements.

It is undisputed appellant exercised due diligence to secure the witness's attendance at trial, having subpoenaed her in a timely manner. It has been said that "[o]ur judicial system is grounded on the sanctity of compulsory process, and it operates on the assumption that a subpoenaed witness—whether a police officer or the President of the United States—will either obey an order to appear in court or present his excuses sufficiently in advance of the appearance date . . . ." (*Gaines v. Municipal Court* (1980) 101 Cal.App.3d 556, 560.) In this case, there is not even a hint of defense complicity or neglect regarding this witness' failure to appear at trial.

Respondent argues the representations made by counsel left the trial court with little choice but to proceed because, even though the witness was under subpoena, defense counsel offered no information that would indicate when, if ever, the witness would become available to testify. But, no inquiry was made by the trial court as to how long counsel felt it would take to secure the witness's presence. Furthermore, it is obvious that defense counsel was surprised when the witness failed to appear, and as a practical matter, there was little defense counsel could say until further inquiry was made into the matter and further information was available as to the witness's whereabouts and a plausible time estimate of when the witness could be produced. While the trial judge was not required to grant an unending continuance, defense counsel simply requested that she be given *some* reasonable period of time to produce the witness; a request summarily denied by the court.

Turning to the question of whether there was prejudice, the test is assessed under the relatively lenient standard of *People v. Watson*, *supra*, 46 Cal.2d at page 836. Under that standard, an error warrants reversal where it appears "reasonably probable" the

7

defendant would have obtained a more favorable outcome had the error not occurred. "A ' "reasonable probability" ' for these purposes 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility' [citation]" that the jury would have reached a different result. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1054–1055.)

First, we note that appellant claims "[t]he proffered testimony of the subpoenaed defense witness, Ms. Teondra West, was material, not cumulative, and could not be proven by any other means. [It was anticipated that she would] testify that the [*sic*] Mr. Jobah and appellant had a confrontation the previous day and Mr. Jobah threatened to call the police if appellant did not leave the area."

In this regard, the expected testimony of this witness would have provided the jury with evidence of Jobah's animus against appellant. Also, it would have contradicted Jobah's testimony in several key respects. It would have contradicted Jobah's denial that he "ever had any problems with [appellant] before July 26th." It would have contradicted Jobah's testimony that before the attempted robbery, appellant had never lingered outside his store. Most importantly, it would have contradicted Jobah's denial that he "exchanged heated words" with appellant on the day before this incident, and Jobah's denial that he "actually threatened to call the police" against appellant.

Furthermore, it would have refuted the prosecutor's damaging argument that "Mr. Jobah is testifying about what happened to him as a victim of this attempted robbery. He doesn't know [appellant]. *There's no evidence anywhere that he has any dislike for* [appellant]. [Appellant] has only been a customer of the store three or four times before . . . , that's it." (Italics added.)

During their lengthy deliberations, the jury asked for a read-back of "Mr. Jobah's testimony on the previous times he has seen [appellant] before July 26th?" This suggests the jury gave substantial consideration to evidence of the nature of Jobah's prior encounters with appellant. (*People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295.) In this case, the absent witness's expected testimony on this subject would have potentially impeached and undermined Jobah's testimony that nothing had occurred between him

8

and appellant before July 26, 2012, that would cause him to harbor any animosity toward appellant. Also, Jobah's purported threat to call the police on appellant the day before the attempted robbery could provide a plausible explanation for why Jobah would have pushed the silent alarm and summoned the police when appellant returned to the store.

Material evidence includes not only evidence that is exculpatory but also evidence that serves to impeach the credibility of a witness who supplied the only evidence linking the defendant to the crime.[6] (*People v. Salazar* (2005) 35 Cal.4th 1031, 1050; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 177.) The jury's determination of appellant's guilt or innocence was entirely dependent on the jury's assessment of Jobah's credibility. The prejudice inquiry in this case looks to whether the anticipated testimony from the subpoenaed witness might reasonably have produced "a significantly different impression of [Jobah's] credibility . . . ." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680.)

Here, the case was close, as evidenced by the difficulty the jury had at arriving at a verdict. The testimony of the subpoenaed witness, if believed by the jury, could have undermined the case against appellant and may have given the jury another reason to doubt Jobah's testimony at trial. Therefore, appellant has established prejudice from the court's denial of his request for a continuance to attempt to secure the attendance of this witness because a reasonable probability exists that the result of these proceedings would have been different had this witness been called to testify. (See *Gonzalez*, *supra*, 126 Cal.App.4th at p. 1549.)

---

[6] The trial court's premise for denying appellant a continuance was that the proffered testimony would not "go directly towards the [appellant's] guilt or innocence. . . ." This ruling constitutes an abuse of discretion because, under certain circumstances, impeachment evidence is no less material than exculpatory evidence. In *United States v. Bagley* (1985) 473 U.S. 667, the high court observed, "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." (*Id.* at p. 676, quoting *Napue v. Illinois* (1959) 360 U.S. 264, 269.)

9

# IV.

## DISPOSITION

The judgment is reversed.

_____
RUVOLO, P. J.

I concur:


_____
RIVERA, J.

REARDON, J.   Dissent

I respectfully dissent.  To secure reversal of his conviction, appellant must show a manifest abuse of discretion by the trial court in denying his motion to continue trial, and that the denial of the motion resulted in prejudice.  The basis for the continuance was the failure of a witness to appear for trial after being subpoenaed by the defense.  The witness was apparently appellant's girlfriend who was present during a verbal altercation at the grocery store between appellant and employee Abdulsalam Jobah, the victim of the attempted robbery.  This altercation occurred the day before the attempted robbery, and the thrust of this offer of proof was that Mr. Jobah was biased against appellant and, therefore, fabricated his entire testimony concerning the attempted robbery.  The trial court found the offer of proof insufficient and, at best, a "ground" for "possible argument."  The motion to continue the trial was denied.

Based upon this weak offer of proof and in the absence of any indication by the defense as to when the witness would be available to testify, the trial court's denial of the motion to continue trial was not an abuse of discretion and, as well, was not prejudicial.

I would affirm the judgment of conviction.

_____
REARDON, J.

1